SARAH E. ROSS, Bar No. 252206
sross@littler.com
ALEXANDRIA M. WITTE, Bar No. 273494
awitte@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
Telephone: 310.553.0308
Fax No.:   310.553.5583

Attorneys for Defendant
HUHTAMAKI, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN J. CHAVEZ, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>HUHTAMAKI, INC. a Kansas corporation; and DOES 1 through 10, inclusive,<br><br>        Defendant. | Case No.  2:21-cv-1073<br><br>**DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, & 1446]**<br><br>Complaint Filed: June 5, 2019<br>(Los Angeles County Superior Court, Case No. 19STCV19491) |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF JUAN J. CHAVEZ AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant HUHTAMAKI, INC. ("Defendant") removes the above-captioned action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court, Central District of California, pursuant to 28 U.S.C. sections 1332(d) (Class Action Fairness Act of 2005), 1441(b), and 1446 on the following grounds:

**I.    STATEMENT OF JURISDICTION**

1.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

**II.    VENUE**

2.    This action was filed in the Superior Court for the State of California, County of Los Angeles. Venue properly lies in the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. sections 84(c)(2), 1391, 1441, and 1446.

**III.    PLEADINGS, PROCESS, AND ORDERS**

3.    On June 5, 2019, Plaintiff Juan J. Chavez ("Plaintiff") filed a Class Action Complaint against Defendant in Los Angeles County Superior Court, titled: *JUAN J. CHAVEZ, individually, and on behalf of all others similarly situated,*

*Plaintiff, vs. HUHTAMAKI, INC., a Kansas corporation, and DOES 1 through 10, inclusive, Defendants*, bearing Case No. 19STCV19491 (the "Complaint"). The Complaint asserts the following eight (3) causes of action: (1) Failure to Pay Minimum and Straight Time Wages; (2) Failure to Pay Overtime Compensation; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Breaks; (5) Failure to Indemnify Necessary Business Expenses; (6) Failure to Timely Pay Final Wages at Termination; (7) Failure to Provide Accurate Itemized Wage Statements; and (8) Unfair Business Practices.  On June 10, 2019, Defendant was served with the Complaint, along with copies of the Summons, Complaint, Civil Case Cover Sheet and Addendum, Notice of Case Assignment, Voluntary Efficient Litigation Stipulations, and Alternative Dispute Resolution (ADR) Information Package, through Defendant's agent for service of process A true and correct copy of the Summons, Complaint, Civil Case Cover Sheet and Addendum, Notice of Case Assignment, Voluntary Efficient Litigation Stipulations, and Alternative Dispute Resolution (ADR) Information Package served upon Defendant is attached as **Exhibit A** to the Declaration of Sarah E. Ross ("Ross Decl.") In Support of Defendant's Notice of Removal, filed concurrently herewith. Ross Decl. ¶ 2, Exh. A.

4.    On or around June 20, 2019, Plaintiff served a Notice of Initial Status Conference on Defendant, including the Court Order Regarding Newly Filed Class Action and Certificate of Mailing.  On June 19, 2019, Plaintiff filed a Proof of Service of Summons, indicating service on Defendant on June 10, 2019.  *See* Ross Decl. ¶¶ 3-4, Exhs. B-C.

5.    On July 9, 2019, Defendant filed its Answer in the Superior Court of the State of California, County of Los Angeles. Ross Decl. ¶ 5, Exh. D.

6. Defendant initially removed this matter to the United States District Court for the Central District of California ("Central District") on July 10, 2019, as case no. 2:19-cv-05930-ODW-JEM.  *See* Ross Decl. ¶ 6, Exh. E (Defendant's Notice Removal, Civil Case Cover Sheet, Declaration of Amy Peterson, Declaration of Sarah

Ross, Notice of Related Cases, Corporate Disclosures, and Notice of Interested Parties).

7.    On July 11, 2019, the Central District issued a Notice of Assignment to United States Judge Otis Wright, Notice to Parties of Court-Directed ADR Program. On July 12, 2019, the Central District issued a Minute Order (In Chambers) and order Scheduling Meeting of Counsel. *See* Ross Decl. ¶¶ 7-8, Exhs. F-G.

8.    On August 8, 2019, Plaintiff filed his Motion to Remand the matter back to state court. On August 19, 2019, Defendant filed its Opposition to Plaintiff's Motion to Remand. On August 26, 2019, Plaintiff filed his Reply in support of his Motion to Remand.  *See* Ross Decl. ¶¶ 9-11, Exhs. H-J (Plaintiff's Motion to Remand filing, Defendant's Opposition filing, and Plaintiff's Reply filing).

9.    On September 13, 2019, the Central District issued a Scheduling and Case Management Order, in which the Central District required, among other things, that Plaintiff file his motion for class certification within 90 days of removal, or by October 8, 2019. *See* Ross Decl. ¶ 12, Exh. K.  **Plaintiff's counsel did not comply with this deadline, nor request a continuance of this deadline from either the defense or the Court.**  *Id*.

10.   On September 16, 2019, the Central District issued a Minute Order Scheduling a Settlement Conference. On November 13, 2019, Defendant filed a Notice of Appearance of Counsel for Alexandria M. Witte. On November 13, 2019, Defendant filed the Parties' Stipulation and Protective Order. On November 15, 2019, Judge Wright entered the Parties' Stipulation and Protective Order. *See* Ross Decl. ¶¶ 13-16, Exhs. L-O.

11.   On January 8, 2020, Plaintiff and Defendant filed a Joint Request for Ruling on Submitted Matter, requesting a ruling on Plaintiff's Motion to Remand. On January 14, 2020, Judge Wright issued an Order Granting Plaintiff's Motion to Remand, and issued a letter to remand the matter back to the Los Angeles County Superior Court. On or about January 16, 2020, Plaintiff filed a Notice of Entry of

Remand Order with the Los Angeles County Superior Court. *See* Ross Decl. ¶¶ 17-19, Exhs. P-R.

12.   On or about January 16, 2020, Plaintiff filed a Notice of Related Cases in the Los Angeles Superior Court regarding his second-filed PAGA action, Los Angeles County Case No. 19STCV43672.   On or about February 20, 2020, Plaintiff filed a Notice of Ruling regarding the Los Angeles Superior Court's Order regarding Plaintiff's Notice of Related Cases.  *See* Ross Decl. ¶¶ 20-21, Exhs. S-T.

13.   On or about February 12, 2020, Plaintiff filed a Notice of Initial Status Conference with the Los Angeles County Superior Court. On or about April 17, 2020, Plaintiff and Defendant filed a Joint Initial Status Conference Class Action Response Statement with the Los Angeles County Superior Court. On or about July 31, 2020, Plaintiff and Defendant filed another Joint Initial Status Conference Class Action Response Statement with the Los Angeles County Superior Court. On or about August 7, 2020, the honorable Carolyn Kuhl of the Los Angeles Superior Court entered a Minute Order regarding the Initial Status Conference. *See* Ross Decl. ¶¶ 22-25, Exhs. U-X.

14.   On September 3, 2020, Defendant again filed an Answer in the Superior Court of the State of California, County of Los Angeles. *See* Ross Decl. ¶ 26, Exh. Y.

15.   On January 5, 2021, Plaintiff and Defendant filed a Stipulation and Protective Order—Confidential and Highly Confidential Designations with the Los Angeles Superior Court. On January 13, 2021, Judge Carolyn Kuhl entered the Parties' Stipulation and Protective Order—Confidential and Highly Confidential Designations with the Los Angeles Superior Court. *See* Ross Decl. ¶¶ 27-28, Exhs. Z-AA.

16.   On January 7, 2021, Plaintiff was deposed in this matter, and at that point it was discovered by Defendant, by and through Plaintiff's testimony under penalty of perjury, that he changed his testimony in his Declaration of Juan J. Chavez filed in support of his Motion to Remand in the Central District. A true and correct copy of

the relevant portions of the deposition transcript of Plaintiff Juan J. Chavez, taken on January 7, 2021, is attached as **Exhibit BB** to the Ross Declaration, filed concurrently herewith. Ross Decl. ¶ 29, Exh. BB.

17.    On or about February 2, 2021, Plaintiff erroneously filed, without leave of court, a First Amended Complaint in Los Angeles Superior Court. *See* Ross Decl. ¶ 30, Exh. CC.

18.    Pursuant to 28 U.S.C. § 1446(d), the attached **Exhibits A-CC** constitute all process, pleadings and orders served on Defendant or filed or received by Defendant in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Superior Court of the State of California, County of Los Angeles, or served by any party.

## IV.    REMOVAL IS TIMELY BASED ON NEW FACTS AND PLAINTIFF'S BAD FAITH ON MOTION TO REMAND

19.    An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendant within 30 days of service on defendant of the initial pleading. *See* 28 U.S.C. § 1446(b)(1); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). However, if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *See* 28 U.S.C. § 1446(b)(3).

20.    "A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013) (citing 28 U.S.C. 1453(b)). "[W]here a defendant alleges CAFA jurisdiction, 'as long as the complaint or "an amended pleading, motion, order or other paper" does not reveal that

1    the case is removable, the 30-day time period never starts to run and the defendant

2    may remove at any time.'" *Johnson v. Sunrise Senior Living Mgmt., Inc.*, No.

3    CV1600443BRORAOX, 2016 WL 917888, at *4 (C.D. Cal. Mar. 8, 2016)

4    (O'Connell, J.) (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir.

5    2014)). This is because "CAFA explicitly allows review of remand orders

6    'notwithstanding section 1447(d)[.]'" *Rea*, 742 F.3d at 1238 (quoting 28 U.S.C. §

7    1453(c)(1)); see also, *Taylor v. Cox Commc'ns California*, LLC, 673 F. App'x 734

8    (9th Cir. 2016) (finding second removal notice timely despite that it had been three

9    years since the filing of the first petition).

10       21.   "[T]he general rule [is] that where a court has previously remanded a

11   removed action . . . successive removals are allowed only where the second notice of

12   removal is based on newly discovered fact not available at the time of the first

13   removal." *Garay v. Sw. Airlines Co.*, No. 19-CV-05452-PJH, 2019 WL 6977114, at

14   *6 n.1 (N.D. Cal. Dec. 20, 2019). "'[I]n the cases where courts allowed successive

15   removal based on new facts, those new facts put the defendant in a different position

16   compared to where it stood during the first removal, in the sense that the new facts

17   gave the defendant a newfound ability to allege federal jurisdiction that it did not have

18   during its first removal.'" *Muniz v. UtiliQuest, LLC*, No. CV 19-08759 PA (SKX),

19   2019 WL 6827270, at *4 (C.D. Cal. Dec. 5, 2019) (Anderson, J.) (quoting *Waters v.

20   Kohl's Dep't Stores, Inc.*, No. 218CV00328ODWAFM, 2018 WL 1664968, at *1

21   (C.D. Cal. Apr. 4, 2018) (Wright, J.) (emphasis added)).

22       22.   A valid ground for a second removal petition is "new discovery wherein

23   Plaintiff has admitted or confirmed that in excess of $5,000,000 is in controversy."

24   *Allen v. UtiliQuest, LLC*, No. C 13-4466 SBA, 2014 WL 94337, at *3 (N.D. Cal. Jan.

25   9, 2014); see also *Mattel Inc. v. Bryant*, 441 F.Supp.2d 1081, 1089 (C.D. Cal. 2005)

26   (Carter, J.) (second notice of removal proper if "the plaintiff after remand discloses

27   that the amount in controversy is greater than the statutory amount in controversy");

28   *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (when considering

removal or remand, a court should consider admissions by a plaintiff because such admission constitutes "summary judgment-type evidence relevant to the amount in controversy at the time of removal").

23.    Such papers justifying the filing of a second removal petition could include facts divulged in discovery, including (a) the plaintiff's deposition transcript (*Lockhart v. Columbia Sportswear Co.*, No. 515CV02634ODWPLAX, 2016 WL 2743481, at *3, fn. 3 (C.D. Cal. May 11, 2016) (finding second notice of removal was timely filed on the ground that plaintiff's deposition testimony provided requisite support for federal jurisdiction under CAFA); (b)  an interrogatory (*Lillard v. Joint Med. Products*, No. C 94–3699 SC ENE, 1995 WL 20609, at *3 (N.D. Cal. 1995); and/or (c) a request for admission (*Nunez v. Ricoh Americas Corp.*, No. SA CV 11-1177 DOC, 2011 WL 5827960, at *2–3 (C.D. Cal. Nov. 16, 2011) (Carter, J.)).

24.    When removal is based upon new facts elicited at a plaintiff's deposition, it is the date of the receipt of the deposition transcript, not the date of deposition itself, that begins removing party's time to remove within 30 days. See *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 886–87 (9th Cir. 2010); *Vieira v. Mentor Worldwide, LLC*, 392 F. Supp. 3d 1117, 1127 (C.D. Cal. 2019), reconsideration denied, No. CV1904939ABPLAX, 2019 WL 5616960 (C.D. Cal. Oct. 29, 2019) (Birrote, J.); *Figueroa v. Delta Galil USA, Inc.*, No. 18-CV-07796-RS, 2019 WL 1433727, at *3 (N.D. Cal. Apr. 1, 2019); *Godoy v. Winco Holding Inc.*, No. 15-cv-01397-ODW-SP, 2015 WL 6394474, at *4 (C.D. Cal. Oct. 22, 2015) ("The deposition transcript is thus the first paper under which it could be ascertained that the case was removeable."); *Williams v. Agilent Techs.*, No. 04-1810-MMC, 2004 WL 2648197, at *4 (N.D. Cal. Aug. 5, 2004) ("[B]ecause defendant removed the instant action within 30 days of receiving the transcript of the [plaintiff's] deposition, the court finds the removal proper.").

25.    Removal of this action is timely because this Notice of Removal has been filed within 30 days from January 19, 2021, when Defendant received a copy of the

1    transcript from Plaintiff's deposition. 28 U.S.C. § 1446(b). Ross Decl. ¶ 29, Exh. BB.

2    26.    Notably, Defendant's first attempt at removal was thwarted by Plaintiff's

3    Motion to Remand, which was supported by Plaintiff's Declaration in which he

4    testified to the amount of time he allegedly spent working off the clock ("Depending

5    on where I was in the line to clock in, I regularly waited in line for about 2 to 3

6    minutes before clocking in for my shift."), and the frequency of missed meal periods

7    ("More often than not, I was able to take my lunch breaks, but once per week on

8    average I had to miss my lunch break entirely because of the amount of loading we

9    were assigned to complete.") Ross Decl. ¶ 9, Exh. H (Chavez Decl., ¶¶ 5-6).

10    27.    However, during Plaintiff's deposition on January 7, 2021, Plaintiff's

11    testimony noticeably changed, such that he testified that he allegedly spent

12    approximately 5 to 10 minutes working off the clock each work day (Plf. Dep. Tr.,

13    72:1-12, 72:24-73:2, 81:17-21), that he worked 9 to 10 hours a day 3 times a week and

14    at least 8 hours per day every other day in the week (Plf. Dep. Tr., 59:6-22, 60:3-5,

15    71:2-12); as such, because he worked shifts of at least 8 hours a day, any time spent

16    off-the-clock would necessarily be overtime hours worked. Plaintiff also testified at

17    deposition that he missed his meal periods approximately 3 days each week (one of

18    which was off the clock and missed entirely, and two of which were late meal periods

19    at around 1:00 p.m., well after the fifth hour of work) (Plf. Dep. Tr., 59:6-22, 88:6-9,

20    92:17-21, 93:13-17, 94:6-13).    Ross Decl. ¶ 29, Exh. BB.  Additionally, he testified

21    that he missed his rest breaks 4 or 5 times each week.  Ross Decl. ¶ 29, Exh. BB (Plf.

22    Dep. Tr., 98:5-10).

23    28.    Based on Plaintiff's deposition testimony of January 7, 2021, it is clear

24    that in his Motion to Remand, Plaintiff tremendously downplayed the number of times

25    each week during the class period was allegedly not provided full, timely and

26    interrupted meal periods as well as work off the clock in order to avoid federal

27    jurisdiction (as well as, avoid class certification requirements in federal court)[1] and

28

---

[1] Of particular importance, while in federal court, the Central District ordered Plaintiff

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

1   have the matter remanded to state court.

2   **V.    NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT**

3       29.    Contemporaneously with the filing of this Notice of Removal in the

4   United States District Court for the Central District of California, the undersigned is

5   providing written notice of such filing to Kane Moon, H. Scott Leviant, Ani

6   Martirosian of Moon & Yang, APC, Plaintiff's counsel of record. In addition, a copy

7   of this Notice of Removal will be filed with the Clerk of the Superior Court of the

8   State of California, County of Los Angeles. Ross Decl. ¶ 33.

9   **VI.    CAFA JURISDICTION**

10      30.    CAFA grants United States district courts original jurisdiction over:

11  (a) civil class action lawsuits filed under federal or state law; (b) where the alleged

12  class is comprised of at least 100 individuals; (c) in which any member of a class of

13  plaintiffs is a citizen of a state different from any defendant; and (d) where the

14  matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15  *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance

16  with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement

17  for removal, and is timely and properly removed by the filing of this Notice of

18  Removal.

19      **A.    Plaintiff Filed A Class Action Under State Law**

20      31.    Plaintiff filed his action as a class action based on alleged violations of

21  California state law. Complaint ¶¶ 4, 23.

22      **B.    The Proposed Class Contains At Least 100 Members**

23      32.    28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not

24  apply to any class action where "the number of members of all proposed plaintiff

25  classes in the aggregate is less than 100."

26      33.    Plaintiff filed this action on behalf of "Plaintiff and all other persons who

27  ───────────────────────────────

28  to file his motion for class certification within 90 days of removal, or by October 8, 2019—a deadline which Plaintiff missed and which lapsed prior to the order granting remand on January 14, 2020.  *See* Ross Decl., ¶¶ 12, 16, Exhs. K, O.

have been employed by any Defendants in California as an hourly-paid, non-exempt employee during the statute of limitations period applicable to the claims pleaded …." Compl. ¶ 2. In Plaintiff's own words, "the Class is estimated to be greater than 100 individuals …." Compl. ¶ 27(a).

34.     Based on a review of Defendant's records, at the time Defendant first removed this case on July 10, 2019, Defendant employed at least 332 hourly, nonexempt employees working in its California locations from June 5, 2015 to July 1, 2019. Declaration of Amy Peterson in Support of Defendant's Removal of Civil Action to Federal Court Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 (hereinafter "Peterson Decl.") ¶ 2. As such, both the Complaint and Defendant's internal records demonstrate that there are well over 100 putative class members in this case.

**C.     Defendant Is Not A Governmental Entity**

35.     Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

36.     Defendant is a corporation, not a state, state official, or other government entity exempt from CAFA.  Peterson Decl. ¶ 7.

**D.     There Is Diversity Between At Least One Class Member And One Defendant**

37.     CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

10.

38.     For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place he resides with the intention to remain). Furthermore, allegations of residency in a state court complaint create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (finding a place of residence provides "'prima facie' case of domicile").

39.     Plaintiff is a resident of California. Compl. ¶ 13. Defendant has thus established by a preponderance of the evidence that Plaintiff resides and is domiciled in California, and is, thus, a citizen of California. *See id.*; *Lew*, 797 F.2d at 751; *Smith*, 2008 WL 744709, at *7.

40.     Defendant is not a citizen of the State of California. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

41.     Huhtamaki, Inc. is a Kansas corporation, and a wholly-owned subsidiary of Huhtamaki Americas, Inc., a Delaware corporation. The ultimate parent of Huhtamaki Americas, Inc. is Huhtamaki Oyj, a public company domiciled in Finland and listed on NASDAQ OMX Helsinki Ltd.  Peterson Decl., ¶ 8. And, as shown below, Defendant's principal place of business is located in De Soto, Kansas.

42.     The Supreme Court has explained that a corporation's principal place of business is determined under the "nerve center" test. *See Hertz Corp. v. Friend,* 599 U.S. 77, 80-81 (2010). Under the "nerve center" test, the principal place of business is

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

11.

the state where "a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* The Supreme Court further explained in *Hertz* that a corporation's nerve center "should normally be the place where the corporation maintains its headquarters" and that a corporation's nerve center is a "single place." *Id.* at 93.

43.    Under these criteria, Huhtamaki, Inc.'s principal place of business is in Kansas, where it operates its business. Peterson Decl., ¶ 9. The majority of Huhtamaki, Inc.'s corporate officers work from its headquarters at 9201 Packaging Drive, De Soto, Kansas 66018. Accordingly, Kansas is primarily where Huhtamaki Inc.'s corporate officers direct, control, and coordinate Huhtamaki's activities and make operational, executive, administrative and policy-making decisions. Peterson Decl., ¶ 9.

44.    The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

45.    Accordingly, the named Plaintiff is a citizen of a state (California) different from Defendant (Kansas), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### E.    The Amount In Controversy Exceeds $5,000,000[2]

46.    Plaintiff does not allege the amount in controversy in the Complaint. In his Prayer for Relief, Plaintiff seeks compensatory damages, including unpaid compensation for unpaid wages, unpaid meal period premium wages, unpaid rest period premium wages, unpaid business expenses, statutory wage penalties, interest, attorneys' fees, and costs. Complaint, Prayer for Relief. When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal

---

[2] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

12.

may do so.

47.    The Supreme Court, in *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014), recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* Otherwise, "the amount-in-controversy allegation of a defendant seeking federal-court adjudication should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 549-50.

48.    Defendant denies the validity and merit of Plaintiff's claims, the legal theories they are based upon, and Plaintiff's request for monetary and other relief. For purposes of removal, however, and without conceding that Plaintiff or the putative class is entitled to any damages or penalties whatsoever, it is apparent that the aggregated claims of the putative class establishes, by a preponderance of evidence, that the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

49.    For purposes of determining whether a defendant has satisfied the amount in controversy requirement, the Court must presume that the Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "'plaintiff prevails on liability'") (other internal citation omitted)). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Inv., Inc.* 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

13.

controversy).

50. Plaintiff's Complaint alleges that "[t]hroughout the statutory period, Defendants failed to pay Plaintiff for all hours worked (including minimum wage, straight time wages, and overtime wages), failed to provide Plaintiff with uninterrupted meal periods, failed to authorize and permit Plaintiff to take uninterrupted rest periods, failed to indemnify Plaintiff for necessary business expenses, failed to timely pay all final wages to Plaintiff when Defendants terminated Plaintiff's employment, and failed to furnish accurate wage statement to Plaintiff." Plaintiff allege his "experience working for Defendants was typical and illustrative." Compl. ¶ 14.

51. In addition, Plaintiff alleges a cause of action for violation of the Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.* Complaint ¶¶ 77-95. Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class' minimum wage and overtime claims from three to four years from the filing of the Complaint, which in this case, extends the statute of limitations back to June 5, 2015. *See* CAL. BUS. & PROF. CODE § 17208; *Cortez v. Purolater Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

52. The Court must also consider facts proffered by a plaintiff in discovery for purposes of CAFA removal. See, *Bicek v. C & S Wholesale Grocers, Inc.*, No. 2:13-CV-00411-MCE, 2013 WL 4009239 (E.D. Cal. Aug. 5, 2013) (allowing defendants to supplement their original notice of removal to include plaintiff's deposition testimony regarding the amount of overtime he worked to calculate the amount in controversy for purposes of all class members, and denying plaintiff's motion to remand). Removal will be sustained where there is evidence sufficient to support the assumption that those working at the defendant's other employees worked the same hours as plaintiff, for purposes of the CAFA calculation. (*Id.*)

53. As noted above, by the time Defendant had originally removed this case,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

14.

Defendant had employed at least 332 hourly, nonexempt employees working in its California locations since June 5, 2015 until approximately July 1, 2019. Peterson Decl. ¶ 2.

**1.    Amount In Controversy—Plaintiff's Minimum Wage Claim**

54.    In his First Cause of Action, Plaintiff alleges that "[a]t all relevant times herein mentioned, Defendants knowingly failed to pay to Plaintiff and the Class compensation for all hours they worked." Compl. ¶ 33. Plaintiff also alleges he and putative class members "were required to wait in line in order to clock into work each workday, uncompensated. This included clocking back into work after meal periods." Compl. ¶ 16. Plaintiff further alleges meal periods were interrupted. Compl. ¶ 17.

55.    At his deposition on January 7, 2021, Plaintiff testified that during the putative class period, he typically worked from 5:00 a.m. to 2:00 p.m. (9 hours) or 3:00 p.m. (10 hours) approximately three days a week, and worked 8 hours a day, from 5:00 a.m. to 1:00 p.m., every other day in the week. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 59:6-22, 60:3-5, 71:2-12). Plaintiff also testified that he allegedly worked 5 to 10 minutes off the clock waiting in line to clock in for the day due to issues with the timeclock, until the timeclock system was changed in or about 2018 and he waited 3 minutes off the clock standing in line to clock in. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 72:1-12, 72:24-73:2, 81:17-21). Plaintiff also testified that he clocked out and worked though his meal periods approximately once per week (and took late meal periods at 1:00 p.m., well after the fifth hour of work, 2 days per week) during the putative class period. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 59:6-22, 88:6-9, 92:17-21, 93:13-17, 94:6-13, 122:8-14).

56.    If successful on claims for unpaid minimum wage under California Labor Code section 1194, employees may also recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon." CAL. LABOR CODE § 1194.2. Plaintiff specifically seeks liquidated damages. Compl. ¶ 38.

57.    While Defendant denies the validity and merit of Plaintiff's unpaid

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

15.

minimum wage claim, for purposes of removal only, based on a preliminary review of their records, the putative class of 332 non-exempt employees have worked 47,146 workweeks during the statutory period from June 5, 2015 to July 1, 2019.[3] Peterson Decl., ¶ 2. The average hourly rate for non-exempt employees during the class period is $22.56. Peterson Decl., ¶ 2.

58.    At his deposition, Plaintiff testified that his coworkers worked the same schedule that he did, and had issues with the timeclock as well. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 38:17-24, 56:19-23, 74:5-75:25, 77:24-78:16.)  In addition, Plaintiff also testified that, similar to him, other employees clocked out for meal breaks but continued to work.  Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 123:14-19.)

59.    Based on Plaintiff's deposition testimony, using a conservative estimate of 45 minutes of unpaid wages per work week, including 5 minutes of off the clock work prior to shift 3 times per week, and one meal period spent working 30 minutes off the clock per week, and the amount in controversy for the unpaid minimum wage claim totals **$1,595,421** (47,146 * .75 hour per workweek * $22.56 * 2 (liquidated damages) = $1,595,421.)

### 2.    Amount In Controversy—Plaintiff's Overtime Claim

60.    In his Second Cause of Action, Plaintiff alleges that he and the Class have worked more than eight hours in a workday "[a]t all times relevant hereto" and were not paid overtime compensation. Complaint ¶¶ 44-45. As such, Plaintiff seeks compensation for Defendant's alleged failure to fully compensate overtime hours.

61.    At his deposition on January 7, 2021, Plaintiff testified that during the putative class period, he typically worked from 5:00 a.m. to 2:00 p.m. (9 hours) or 3:00 p.m. (10 hours) approximately three days a week, and worked 8 hours a day, from 5:00 a.m. to 1:00 p.m. every other day in the week, and as such, because he worked shifts of at least 8 hours a day, any time spent off-the-clock would necessarily

---

[3]Although the amount in controversy for all claims continues to accrue, Defendant is providing calculations based on the same time period in its original removal.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

be overtime hours. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 59:6-22, 60:3-5, 71:2-12). Plaintiff also testified that he allegedly worked 5 to 10 minutes off the clock waiting in line to clock in for the day due to issues with the timeclock, until the timeclock system was changed in or about 2018 and he waited 3 minutes off the clock standing in line to clock in. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 72:1-12, 72:24-73:2, 81:17-21). Plaintiff also testified that he clocked out and worked though his meal periods approximately once per week (and took late meal periods at 1:00 p.m., well after the fifth hour of work, 2 days per week) during the putative class period. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 59:6-22, 88:6-9, 92:17-21, 93:13-17, 94:6-13, 122:8-14).

62.    California Labor Code section 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek. CAL. LABOR CODE § 510(a). The statutory period for recovery under California Labor Code section 510 is calculated under a four-year statute of limitations. *See* CAL. CODE CIV. PROC. § 338(a) (setting a three-year period); CAL. BUS. & PROF. CODE § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

63.    During the relevant time period from January 29, 2015 to July 1, 2019, 332 non-exempt employees worked a total of 47,146 workweeks. Peterson Decl., ¶ 2. The average hourly rate for non-exempt employees during the class period is $22.56. Peterson Decl., ¶ 2.

64.    At his deposition, Plaintiff testified that his coworkers worked the same schedule that he did, and had issues with the timeclock as well, as he waited in line off

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

17.

the clock to punch in for 5 minutes approximately 3 times a week, and worked 9 to 10 hour shifts approximately 3 times a week as well. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 38:17-24, 56:19-23, 74:5-75:25, 77:24-78:16.)  Since these employees worked the same schedule as Plaintiff, they worked at least 8 hours a day, and as such, any time spent off-the-clock would necessarily be overtime hours worked. In addition, Plaintiff also testified that, similar to him, other employees clocked out for meal breaks but continued to work.  Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 123:14-19.)

65.    Based on Plaintiff's deposition testimony, using a conservative estimate of 45 minutes of unpaid wages per work week, including 5 minutes of off the clock work prior to shift three times per week, and one meal period spent working 30 minutes off the clock per week, the amount in controversy for the unpaid overtime wage claim totals **$398,855** (47,146 * .75 hours per workweek * $22.56 * 5 overtime rate[4] = $398,855.)

### 3.    Amount In Controversy—Plaintiff's Claim for Meal Period Premiums

66.    In his Third Cause of Action, Plaintiff alleges that "Defendant regularly failed to provide Plaintiff and the Class with both meal periods as required by California law," and/or Defendants "made it impossible or impracticable to take these uninterrupted meal periods …" Compl. ¶ 52. Plaintiff alleges "Defendants regularly, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing 30-minute, continuous and uninterrupted, duty-free meal periods[s], "did not adequately inform Plaintiff and the Class of their right to take a meal periods," and "did not have adequate written policies or practices providing meal periods for Plaintiff and the Class." Compl. ¶ 17. Plaintiff seeks payments for alleged missed meal periods, interest, attorneys' fees and costs of suit.

---

[4] While Labor Code section 510 requires overtime to be calculated at one and one-half (1.5) times the regular rate of pay, because Defendant already accounted for the underlying straight time rate for Plaintiff's minimum wage claim damages, Defendant has applied .5 rather than 1.5 for purposes of calculating the overtime claim damages.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

18.

Complaint ¶¶ 53, Prayer for Relief.

67.    At his deposition on January 7, 2021, Plaintiff testified that during the putative class period, he typically worked from 5:00 a.m. to 2:00 p.m. (9 hours) or 3:00 p.m. (10 hours) approximately three days a week, and worked 8 hours a day from 5:00 a.m. to 1:00 p.m. every other day in the week. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 59:6-22, 60:3-5, 71:2-12). Plaintiff also testified that he clocked out and worked though his meal periods approximately one day per week and took late meal periods at 1:00 p.m., well after the fifth hour of work, 2 days per week during the putative class period. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 59:6-22, 88:6-9, 92:17-21, 93:13-17, 94:6-13, 122:8-14).

68.    An employee denied meal periods may be entitled to an additional hour's wages per day for failure to provide meal periods. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

69.    While Defendant denies the validity and merit of Plaintiff's missed meal period claim, for purposes of removal only, based on a preliminary review of their records, the putative class of 332 employees worked 47,146 workweeks during the statutory period from June 5, 2015 to July 1, 2019. Peterson Decl., ¶ 2. The average hourly rate for non-exempt employees during the class period is $22.56. Peterson Decl., ¶ 2.

70.    At his deposition, Plaintiff testified that his coworkers worked the same schedule that he did. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 38:17-24, 56:19-23, 74:5-75:25, 77:24-78:16.)   In addition, Plaintiff also testified that, similar to him, other employees clocked out for meal breaks but continued to work and took their meal periods late.  Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 123:14-19.)

71.    Based on Plaintiff's deposition testimony, using a conservative estimate of 3 missed or late meal periods per workweek, the amount in controversy for the

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

19.

missed meal period claim totals **$3,190,841** (47,146 workweeks * 3 missed meal periods per workweek * $22.56 = $3,190,841).

### 4.    Amount In Controversy—Plaintiff's Claim for Rest Break Premiums

72.    In his Fourth Cause of Action, Plaintiff alleges that "Defendants failed to authorize Plaintiff and the Class to take rest breaks," and/or "Defendants made it impossible or impracticable to take these uninterrupted rest periods …." Compl. ¶ 56. Plaintiff alleges Defendant did not have "adequate policies or practices permitting or authorizing rest periods," timing of rest periods, or verification of rest periods. Plaintiff alleges Defendant "did not adequately inform" Plaintiff and class members of their right to a rest break, and employees could not take rest breaks because "there was too much work to do." Compl. ¶ 18. Plaintiff seeks payments for alleged missed rest periods, interest, attorneys' fees, and costs of suit. Complaint ¶¶ 57, Prayer for Relief.

73.    At his deposition on January 7, 2021, Plaintiff testified that during the putative class period, he typically worked from 5:00 a.m. to 2:00 p.m. (9 hours) or 3:00 p.m. (10 hours) approximately three days a week, and worked 8 hours a day from 5:00 a.m. to 1:00 p.m. every other day in the week. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 59:6-22, 60:3-5, 71:2-12). Plaintiff also testified that he missed his rest periods approximately 4 to 5 days per week during the putative class period. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 98:5-10).

74.    An employee denied rest breaks may be entitled to an additional hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

75.    While Defendant denies the validity and merit of Plaintiff's missed rest break claim, for purposes of removal only, based on a preliminary review of their records, the putative class of 332 employees worked 47,146 workweeks during the statutory period from June 5, 2015 to July 1, 2019. Peterson Decl., ¶ 2. The average

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

20.

hourly rate for non-exempt employees during the class period is $22.56. Peterson Decl., ¶ 2.

76.    At his deposition, Plaintiff testified that his coworkers worked the same schedule that he did. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 38:17-24, 56:19-23, 74:5-75:25, 77:24-78:16.)  In addition, Plaintiff also testified that, similar to him, other employees missed their rest periods as well.  Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 126:5-12.)

77.    Based on Plaintiff's deposition testimony, using a conservative estimate of 4 missed rest periods per workweek, the amount in controversy for the missed rest period claim totals **$4,254,455** (47,146 workweeks * 4 missed rest periods per workweek * $22.56 = $4,254,455).

**5.    Amount In Controversy—Plaintiff's Claim for Unreimbursed Business Expenses**

78.    In his Fifth Cause of Action alleges that Defendant violated California law and wage orders "by failing to pay and indemnify the Plaintiff and the Class for their necessary expenditures and losses incurred in direct consequence of the discharge of their duties or of their obedience to directions of Defendants." Compl. ¶ 59. Specifically, Plaintiff claims reimbursement "for work-related books (only being reimbursed 80% of the costs of these boots)" among other alleged expenses.  Compl. ¶ 19.  Plaintiff alleges she and the class members have been injured, and seeks reimbursement of expenses, attorneys' fees, expenses, and costs of suit. Complaint ¶¶ 60-61.

79.    At his deposition on January 7, 2021, Plaintiff testified that during the putative class period, he purchased a pair of work boots for approximately $120 to $140 and that Defendant reimbursed him up to 80% of the cost and thus, he and other employees paid for 20% of the cost of workboots out of pocket without reimbursement. Ross Decl. ¶ 29, Exh. BB (Plf. Dep. Tr., 127:12-128:4, 131:5-132:19).

80.    While Defendant denies the validity and merit of Plaintiff's

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

21.

unreimbursed business expenses claim, for purposes of removal only, assuming each of the 332 putative class members each purchased one pair of workboots costing $120, 80% of which was reimbursed by Defendant as a work-related business expense, the amount in controversy for this claim is at least **$7,968** (332 employees * $120 single pair of boots * 20% = $7,968).

**6.    Amount In Controversy—Plaintiff's Waiting Time Penalties Claim**

81.    In his Sixth Cause of Action, Plaintiff seeks waiting time penalties pursuant to California Labor Code sections 201, 202, and 203. Complaint ¶¶ 63-68. The statute of limitations for Plaintiff's Labor Code section 203 waiting time penalty claim is three years. *Pineda v. Bank of Am., N.A.,* 50 Cal. 4th 1389, 1395 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

82.    The Labor Code's penalty for failure to pay wages at termination is up to 30 days wages for each employee. CAL. LABOR CODE § 203(a).

83.    While Defendant denies the validity and merit of Plaintiff's waiting time claim, for purposes of removal only, based on a review of its records, 89 employees have separated from Defendant's employment from June 5, 2016 through July 1, 2019 (*i.e.*, during the relevant limitations period). Peterson Decl., ¶ 3. Therefore, the amount in controversy for Plaintiff's waiting time penalties claim is **$481,882** (89 employees * 8 hours * 30 days * $22.56 average rate of pay).

**7.    Amount In Controversy—Plaintiff's Claim for Inaccurate Wage Statements**

84.    In his Seventh Cause of Action alleges that Defendant "intentionally and willfully failed to provide employees with complete and accurate statements." Compl. ¶ 71. Plaintiff alleges he and the class members have been injured, and seeks all available statutory penalties, damages, attorneys' fees, and costs of suit. Complaint,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

22.

1  Prayer for Relief.

2  85.    Labor Code Section 226(e) provides for a statutory penalty for violations

3  of Labor Code § 226(a)'s wage statement requirements of $50 or actual damages per

4  employee for the initial pay period in which a violation occurs and $100 per employee

5  for each violation in a subsequent pay period, not exceeding an aggregate amount of

6  $4,000 per employee. CAL. LABOR CODE § 226(a). The statutory period for Labor

7  Code § 226(e) penalties is one year. CAL. CODE CIV. PROC. § 340.

8  86.    Defendant pays its non-exempt employees biweekly. For purposes of

9  removal, based on a preliminary review of its records, 255 non-exempt employees

10  worked 6,294 pay periods in California from the period June 5, 2018 to July 1, 2019.

11  Peterson Decl., ¶ 5.

12  87.    Defendant denies the validity and merit of Plaintiff's wage statement

13  claim. However, the amount in controversy for Plaintiff's wage statement claim is

14  **$616,650** ((255 * $50) + (6,294 pay periods – 255 employees) * $100).

15  **8.    Amount In Controversy—Claim for Attorneys' Fees**

16  88.    Plaintiff seeks attorneys' fees and costs in his Complaint. Complaint,

17  Prayer for Relief. Plaintiff's Complaint also alleges claims – for example, for the

18  nonpayment of wages – which allow for the recovery of attorneys' fees.

19  Complaint ¶¶ 40, 48; CAL. LABOR CODE § 218.5. It is well-settled that claims for

20  statutory attorneys' fees are to be included in the amount in controversy. *See*, *e.g.*,

21  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 549 U.S.

22  822 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We

23  hold that where an underlying statute authorizes an award of attorneys' fees, either

24  with mandatory or discretionary language, such fees may be included in the amount in

25  controversy.").

26  89.    In California, it is not uncommon for an attorneys' fee award to be 25 to

27  33 percent of a settlement or judgment. *See*, *e.g.*, *McGuigan v. City of San Diego*, 183

28  Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

23.

million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties, and waiting time penalties); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216-1218 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

90.    The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

91.    Based on Plaintiff's allegations, the amount in controversy for his claims totals **$10,546,072**. This subtotal exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25 percent further increases the amount in controversy by $2,636,518 for a total amount in controversy of **$13,182,590**.

## VII.  SUMMARY

92.    Removal of this action is therefore proper, as the aggregate value of Plaintiff's class causes of action for unpaid overtime, final wages not timely paid, and attorneys' fees are well in excess of the CAFA jurisdictional requirement of $5 million. *See* 28 U.S.C. § 1332(d)(2):

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

24.

| Plaintiff's Alleged Claim | Amount in Controversy Conservative Estimate |
|---|---|
| Unpaid Minimum Wage | $1,595,421 |
| Unpaid Overtime | $398,855 |
| Meal Period Premiums | $3,190,841 |
| Rest Break Premiums | $4,254,455 |
| Unreimbursed Business Expenses | $7,968 |
| Waiting Time Penalties | $481,882 |
| Inaccurate Wage Statements | $616,650 |
| Attorneys' Fees | $2,636,518 |
| **Amount in Controversy** | **$13,182,590** |

93.    Accordingly, although Defendant denies Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 threshold required under CAFA.

94.    WHERFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.


Dated: February 5, 2021

/s/ Sarah E. Ross
SARAH E. ROSS
ALEXANDRIA M. WITTE
LITTLER MENDELSON, P.C.
Attorneys for Defendant
HUHTAMAKI, INC.

4847-1024-5081.7

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

25.